SO ORDERED.

SIGNED this 2nd day of December, 2015.



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

_____

**Designated for print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

**BRADLEY SCOTT WILLIAMS,**

                              **DEBTOR.**

**CASE NO. 14-20159**
**CHAPTER 13**

### MEMORANDUM OPINION AND JUDGMENT DENYING
### DEBTOR'S MOTION FOR POST-CONFIRMATION AMENDMENT OF PLAN

In this contested matter, Wells Fargo Bank, N.A. (Wells Fargo),[1] opposes Debtor

Bradley Scott Williams's (Debtor)[2] motion for the post-confirmation amendment of his

Chapter 13 plan[3] to provide for the vesting of his former homestead in Wells Fargo, the

---

[1] Wells Fargo Bank, N.A., appears by H. Joseph Esry and Jonathon Burford of Kozeny & McCubbin, L.C.

[2] Debtor appears by Jonathan C. Becker.

[3] Doc. 59.

holder of a first mortgage lien on the property.[4]  This is a matter of significant interest to the Chapter 13 bar, as it has been proposed as a means to deal with "zombie mortgages."[5]  For the reasons discussed below, the Court concludes that a Chapter 13 plan that provides for the vesting of mortgaged property in the secured creditor may not be confirmed over the creditor's objection.

**STIPULATED FACTS.**

The parties have stipulated to the following facts.[6]  On February 16, 2005, Debtor entered into a note and mortgage with RBC Mortgage Company, granting a mortgage in a Lawrence, Kansas residence (the Property).  Wells Fargo is the current holder of the note and mortgage.  On November 22, 2013, Wells Fargo filed a foreclosure action regarding the Property.

On January 24, 2014, Debtor filed a voluntary bankruptcy petition under Chapter 13.  The Property was valued at $190,520 on Schedule A.  For taxation purposes, Douglas County currently estimates the value to be $191,200.  At the time the petition was filed, Wells Fargo was owed $169,841.61, and the Property was subject to a junior lien held by

---

[4] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and § 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013.  D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014).  Confirmations of plans are core proceedings which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(L).  There is no objection to venue or jurisdiction over the parties.

[5] *See* Andrea Boyack and Judge Robert Berger, *Bankruptcy Weapons to Terminate a Zombie Mortgage*, 54 Washburn L.J. 451, 469-70 (2015).

[6] Doc. 69.

another entity in the amount of $48,051.82.[7]

Debtor filed a Chapter 13 plan with his petition that provided for him to retain the Property as his principal residence. On March 21, 2014, the Court confirmed the proposed plan without objection from Wells Fargo. On June 1, 2014, Debtor filed a Motion for Post-Confirmation Amendment of the Plan in which he proposed to surrender the Property. There was no objection, and on August 21, 2014, the Court granted the motion. Debtor has abandoned the Property and can no longer claim it as his homestead. One or more agents of Wells Fargo have entered into the Property, changed the back-door lock, winterized the home, and generally maintained the Property.

On February 5, 2015, Debtor filed the Motion to Amend the Plan Post-Confirmation which is the subject of the present dispute.[8] It proposes to modify the confirmed plan to provide:

> [The Property] is surrendered in full satisfaction of the underlying *secured* claim of Wells Fargo Home Mortgage and/or Wells Fargo Bank, N.A. Pursuant [to] 11 USC §§ 1322(b)(8) and (9), title to the [Property] . . . shall vest in Wells Fargo Home Mortgage and/or Wells Fargo [B]ank, N.A. upon confirmation of this amendment to the . . . Plan, and the Order approving this modification shall constitute a deed of conveyance to the Property when recorded with the Douglas County, Kansas Register of Deeds. All secured claims secured by the [Property] will be paid by surrender of

---

[7] The stipulation also includes the following: "Debtor's counsel has indicated that debtor refuse[s] to participate in any loss mitigation proceedings with Wells Fargo Bank, N.A., if those proceeding[s] are going to have any negative implications on [his] taxes or credit report." Doc. 69 at 3, ¶ 20.

[8] Doc. 59.

3

the collateral and foreclosure of the security interests.[9]

Wells Fargo filed a timely objection to the proposed vesting of the Property. The parties have fully briefed the question whether the proposed amended plan may be confirmed.

**DISCUSSION.**

Wells Fargo is the holder of an allowed claim secured by the Property. The proposed amendment to the plan (Proposed Amendment) provides for the surrender *and* the vesting of the Property in Wells Fargo. Wells Fargo objects, contending that neither § 1322(b)(9)[10] nor § 1325(a)(5) allows a Chapter 13 plan to forcibly vest property in an unwilling creditor.

The permissible contents of a Chapter 13 plan are enumerated in § 1322. Subsection (b) specifies various discretionary plan terms, and includes § 1322(b)(9), which provides that a plan may "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." Debtor's Proposed Amendment is based upon this subsection; it proposes to vest the Property in Wells Fargo at the time of confirmation of the amended plan. The Court finds that the content of the Proposed Amendment does not violate § 1322. The question is whether the Proposed Amendment may be confirmed over the objection of Wells Fargo.

The criteria for confirmation of a Chapter 13 plan are stated in § 1325. With respect to each allowed secured claim, subsection (a)(5) provides that the plan may be

---

[9] *Id.* at 4-5.

[10] 11 U.S.C. § 1322(b)(9). References in the text to Title 11 shall be to the section number only.

4

confirmed only if (A) the holder of the claim has accepted the plan, (B) payments under the plan satisfy the cram down standard,[11] or (C) the plan provides for the debtor to surrender the property securing the claim to the holder.  The amended plan confirmed on August 21, 2014, satisfied this standard because Wells Fargo accepted the plan by failing to object, and the plan provided for surrender of the Property to Wells Fargo.  As to the Proposed Amendment, since Wells Fargo objects and Debtor does not contend that cram down is applicable, the only possible basis for confirmation is satisfaction of the alternative that the Proposed Amendment provides for surrender of the Property.  Although the Proposed Amendment provides for surrender of the Property, it also provides for the Property to vest in Wells Fargo.  Does this addition preclude confirmation when the secured creditor objects to the Proposed Amendment?

Both Debtor[12] and Wells Fargo[13] agree that for purposes of a Chapter 13 plan, surrender and vesting are not synonymous.  Although the Bankruptcy Code does not define surrender for purposes of § 1325(a)(5)(C), "it has a well defined meaning.  'Surrender' has been described as the relinquishment of all rights in property, including

---

[11] "Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, *i.e.*, the present value of the collateral, see § 1325(a)(5)(B)(ii)." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997).  Because Debtor does not rely upon cram down under §1325(a)(5)(B), the Court does not consider this subsection.

[12] Doc. 73 at 14 ("The definition[s] of the two words [vesting and surrender] are not the same.").

[13] Doc. 77 at 8 ("Debtor's Motion to Amend the Plan violates Section 1325(a)(5)(C) because it proposes that the Debtor is allowed to do more than merely 'surrender' the property.").

the right to possess the collateral."[14]  Surrender does not transfer ownership.  "Rather,

'surrender' means only that the debtor will make the collateral available so the secured

creditor can, if it chooses to do so, exercise its state law rights in the collateral."[15]

"Vesting" is also not defined in the Code.  But its plain meaning "includes a present

transfer of ownership."[16]  "In the context in which [surrender and vesting] are used in the

Bankruptcy Code, surrender is a less consequential event than vesting.  Surrender means

making the property available to be taken; vesting means transferring title."[17]

Despite the acknowledged difference in the meaning of "surrender" and "vesting,"

a number of bankruptcy courts have confirmed Chapter 13 plans providing for the

surrender and vesting of collateral in the mortgage holder.  Several of these opinions

address confirmation when the secured creditor did not object to the plan.  In *Locascio*,[18]

this Court confirmed such a plan.  After the confirmation of the Locascios' plan providing

for the surrender of real property subject to a mortgage held by Bank of America, the

debtors moved to amend their plan to provide, pursuant to § 1322(b)(8) and (9), that in

addition to surrender, title to the property would vest in the secured creditor and the order

approving the modification would constitute a deed of conveyance when properly

recorded.  Bank of America was duly served, but did not appear.  This Court granted the

---

[14] *In re Rose*, 512 B.R. 790, 793 (Bankr. W.D.N.C. 2014).

[15] *In re Rosa*, 495 B.R. 522, 523 (Bankr. D. Haw. 2013).

[16] *Id*. at 524.

[17] *In re Sagendorph*, 2015 WL 3867955 at *2 (Bankr. D. Mass. June 22, 2015).

[18] *In re Locascio*, No. 12-23159, doc. 58 (Bankr. D. Kan. Dec. 30, 2013).

motion to amend the plan and entered an order prepared by the debtors' counsel.[19] Additional courts have confirmed similar amendments to Chapter 13 plans providing for the surrender and vesting of collateral when the secured creditor did not object.[20]  These decisions rest upon the principle that a secured creditor has accepted a plan for purposes of confirmation under § 1325(a)(5)(A) when proper notice of the motion to amend was served on the secured creditor and no objection was filed.[21]

In addition, some courts have approved plans providing for surrender and vesting over the objection of the secured creditor.  *Sagendorph* is an example.[22]  In that case, despite the objection of the mortgage holder, the Massachusetts Bankruptcy Court approved a plan vesting real property in the creditor where there were no junior encumbrances.  Although the court acknowledged that surrender and vesting are separate concepts, it held that "[a] plan which contains a provision for transferring or vesting in the secured creditor the property that is its collateral would be compliant with and confirmable under § 1325(a)(5)(C) because a transfer of property presupposes its surrender by the transferor.  Surrendering or 'ceding possessory rights' is a preliminary step in the process of transferring title."[23]  The court asserted that this approach advanced

---

[19] The Locascios' counsel was Jonathan C. Becker, who is counsel for Debtor in this case.

[20] *E.g., In re Rosa*, 495 B.R. at 525; *In re Stewart*, 536 B.R. 273, 274-75 (Bankr. D. Minn. 2015).

[21] *E.g., Wachovia Dealer Servs. v. Jones (In re Jones)*, 530 F.3d 1284, 1291 (10th Cir. 2008).

[22] *In re Sagendorph*, 2015 WL 3867955.

[23] *Id*. at *4 (*citing Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006)).

the policy of providing debtors with a "fresh start," "promote[d] coherence in the reorganization chapters of the Bankruptcy Code," and made § 1322(b)(9) operate like its Chapter 11 analog, which allows "dirt for debt" plans.[24]

Zair,[25] a decision of the Bankruptcy Court for the Eastern District of New York, likewise held that a Chapter 13 plan may provide for surrender and vesting of collateral in the secured party without that party's consent, but relied on a different rationale. It reasoned that "Congress did not limit vesting to where the creditor consents under § 1325(a)(5)(A)."[26] The court also found § 1327(b) to be relevant. That section provides that unless the plan or confirmation order provides otherwise, "the confirmation of a plan vests all of the property of the estate in the debtor." The court reasoned that "[b]ecause § 1327 vesting is not limited to a plan to which a secured creditor consents, allowing a debtor to vest property under the plan in a specific non-debtor entity is consistent with § 1327(b), and avoids any confusion as to ownership of property which is surrendered under the plan also being vested in the debtor."[27] The court also observed that this construction removes for debtors uncertainty about when they will be relieved of continued liabilities associated with ownership, and allows the creditor to dispose of the property without awaiting the conclusion of a foreclosure action.[28]

---

[24] Id. at *5.

[25] In re Zair, 535 B.R. 15 (Bankr. E.D.N.Y. 2015).

[26] Id. at 21.

[27] Id. at 22.

[28] Id. at 23-24.

Bankruptcy Judge Berger of this District has also confirmed a plan providing for the surrender and vesting of property in a mortgage holder over the creditor's objection. In *Rosen*,[29] a plan providing for the surrender of mortgaged property to one of the secured creditors had been confirmed in December 2011, but the property remained in the debtors' names four years later. The creditor continued to treat the debtor-creditor relationship as a paying one, and the debtors remained liable for property-related expenses. Judge Berger allowed the debtors to modify the plan to provide for the vesting of the property in the first lien holder. In the unpublished order approving the plan amendment,[30] the court found that the amendment was consistent with § 1322(b)(9) and the fresh start purpose of the Bankruptcy Code. The order held that creditor consent was not required to vest the title in the first mortgage holder as long as it was done in good faith.[31]

But other courts have held that a secured creditor cannot be compelled to accept ownership of collateral. The United States District Court for the District of Oregon in *Watt* reversed a bankruptcy court conclusion that nothing prohibits allowing debtors to both surrender mortgaged property and vest it in the objecting secured creditor.[32] The district court stated:

---

[29] *In re Rosen and Jackson*, No. 11-23129, doc. 41 (Bankr. D. Kan. Feb. 24, 2015).

[30] *Id*. at 5, ¶ 17. The order was prepared by the debtors' counsel, Jonathan C. Becker, who is also counsel for Debtor in this case.

[31] *Id*. at ¶ 18.

[32] *Bank of New York Mellon v. Watt*, 2015 WL1879680 *2 (D. Or. April 22, 2015) (appeal filed June 16, 2015).

9

> Essentially, the bankruptcy court interpreted 11 U.S.C.
> § 1322(b)(9) as creating a "fourth option" under 11 U.S.C.
> § 1325(a)(5). This holding, however, is at odds with the plain
> language of 11 U.S.C. § 1325(a)(5) and established precedent.
> As BNYM denotes, "section 1322(b) does not state that a plan
> that includes any of these provisions is per se confirmable
> [and this is because] [c]onfirmation is governed by section
> 1325, not section 1322." . . . In other words, that "section
> 1322(b) permits inclusion [of a nonstandard provision that
> vests property in a secured creditor does not resolve] whether
> the plan can be confirmed with the nonstandard provision."[33]

The district court further noted that the third option for confirmation under § 1325(a)(5)

unambiguously states that a plan is confirmable where surrender is proposed. The plan

confirmed by the bankruptcy court did not merely propose surrender, it also forcibly

transferred the debtors' interest and attendant liabilities to the creditor. The district court

found that this "interpretation impermissibly transforms the secured creditor's right into

an obligation, thereby rewriting both the Bankruptcy Code and the underlying loan

documents, while at the same time belying the secured creditor's state-created property

rights."[34]

Rose[35] is an example of a bankruptcy court opinion rejecting the notion that a

Chapter 13 debtor may force a secured creditor to whom collateral is surrendered to also

accept title to the property. The Roses' Chapter 13 plan had provided for surrender of

their residence to the SBA and granted relief from stay so foreclosure could be

---

[33] *Id*. at *5 (*quoting In re Rosa*, 595 B.R. at 524).

[34] *Id*. at *6.

[35] *In re Rose*, 512 B.R. 790.

10

undertaken.  A year after confirmation, the SBA had neither started to foreclose nor asserted control.  The debtors moved for authority to transfer the property to the SBA by a quitclaim deed.  The court declined to grant the requested relief.  The court reasoned that surrender under § 1325(a)(5)(C) does not require a creditor to accept the surrendered property, that § 1329(b)(9) does not require a creditor to accept title to the property, that § 105 does not allow a court to alter the parties' substantive rights, and that the applicable state law did not require the creditor to initiate foreclosure or to accept title.[36]  The court added that forcing a lender to take title would open a Pandora's Box of unintended, injurious consequences, which could include forcing the lender to assume burdens for which it did not contract, altering the priorities among holders of claims secured by the property, and imposing potential personal liability on the creditor for such things as environmental contamination and public nuisance violations.[37]

This Court agrees that although § 1322(b)(9) allows vesting the title to property in a secured creditor, § 1325(b)(5) does not permit confirmation of a plan vesting title to collateral in the secured creditor over that creditor's objection.  The plain meaning of the statutes compels this result.  Section 1325(a)(5)(C) permits confirmation without the secured creditor's consent when the plan provides for surrender of the collateral to the creditor.  Surrender and vesting are not equivalent:  "Surrender means making the

---

[36] *Id*. at 793-95.

[37] *Id*. at 796.

11

property available to be taken; vesting means transferring title."[38]  The parties agree that these distinct meanings are applicable.  Section 1322(b)(9) includes vesting as a discretionary term of a plan, but it does not assure confirmation of a plan providing for vesting.  It is tempting to hold that a plan providing for vesting may be confirmed over the secured creditor's objection.  Such a holding would remove the burdens of property ownership from the debtor, accomplish the debtor's intent when surrendering the property, promote the debtor's fresh start, and perhaps promote coherence in the reorganization chapters of the Bankruptcy Code.  But to construe the Bankruptcy Code to achieve these results would, in effect, be judicial legislating that usurps the role of Congress.

Vesting the Property in Wells Fargo would impair Wells Fargo's rights under state law.  In this Court's opinion, the Code fails to provide a basis for a bankruptcy court to do so.  Generally under state law, a mortgagee is not required to accept title to its collateral, but has a right to obtain the title through foreclosure, if it elects to do so.  Vesting the title over Wells Fargo's objection would force it to accept the title and impose unbargained-for obligations on it to pay taxes and other costs associated with the Property.[39]  This

---

[38] *In re Sagendorph*, 2015 WL 3867955 at *2.

[39] Further, in this case, the Property is subject to a junior lien.  The Proposed Amendment provides:  "All secured claims secured by the [Property] will be paid by surrender of the collateral and foreclosure of the security interests."  Debtor does not contend that confirmation would eliminate the junior lien, but appears to suggest that Wells Fargo should eliminate the lien in state court.  Because Wells Fargo would become the title holder upon plan confirmation, the Court observes that it may be unable to eliminate the junior lien through foreclosure of its mortgage, as provided in the Proposed Amendment.  Even if the Court were to accept the proposition that § 1322(b)(9) should be construed to allow vesting of the Property in Wells Fargo over its objection, the Proposed Amendment could not be

12

Court agrees with the *Watt* court that Debtor's interpretation "impermissibly transforms the secured creditor's right into an obligation, thereby rewriting both the Bankruptcy Code and the underlying loan documents, while at the same time belying the secured creditor's state law rights."[40]

The state law interests of a secured creditor may be altered over the creditor's objection when a Chapter 13 plan complies with the cramdown provisions of § 1325(a)(5)(B), which protect the creditor by requiring the plan to provide for lien retention and distribution to the creditor of value equivalent to the present value of its secured claim. But to construe surrender to include vesting would impair the state law rights of the secured creditor without providing any corresponding protective limitation in the confirmation standards. The enactment of § 1322(b)(9), providing that a Chapter 13 plan may provide for property of the estate to vest in an entity other than the debtor, is an insufficient basis for the Court to conclude that Congress intended to alter the state law rights of secured creditors in the manner Debtor proposes. As the United States Supreme Court has stated, "[T]he federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued."[41]

## CONCLUSION.

---

confirmed unless the Court were satisfied that the presence of a junior lien did not preclude confirmation. However, Debtor has not adequately briefed this issue, and the Court makes no findings in this regard.

[40] *Watt*, 2015 WL 1879680 at *6.

[41] *Butner v. United States*, 440 U.S. 48, 56 (1979).

13

For the foregoing reasons, the Court denies Debtor's motion for post-confirmation amendment of his Chapter 13 plan to provide for surrender and vesting of his former residence in the secured creditor holding the first-priority lien on the property. The secured creditor objected to the proposed treatment of its claim, and such a plan cannot be confirmed over the creditor's objection.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure, which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

**JUDGMENT**.

Judgment is hereby entered denying Debtor's motion for post-confirmation amendment of his Chapter 13 plan to provide for vesting of his former homestead in the holder of a first mortgage lien on the Property.[42]  The judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

# # #

---

[42] Doc. 59.

14